UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR MONEY LAUNDERING INVESTIGATION | ML No: 23-916 |

*Reference:*   DOJ Ref. # CRM-182-82612

### APPLICATION OF THE UNITED STATES FOR AN ORDER FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Courtney E. Lee, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Portugal.  In support of this application, the United States asserts:

### RELEVANT FACTS

1. The Central Authority of Portugal, the Prosecutor-General's Office, International Cooperation Department, submitted a request for assistance (Request) to the United States, pursuant to the United Nations Convention Against Transnational Organized Crime, Dec. 12, 2000, T.I.A.S. No. 13127, 2225 U.N.T.S. 209 (Convention).

2. As stated in the Request, the Prosecutor's Office, Department of Investigation and Criminal Action, Fraud and Economic Crime and Violent Crime, for the district of Évora, in

Portugal, is investigating Ion Dumitru, Viorel Ciuraru, Nicu Stefan, and Marian Arcanum (collectively suspects) for money laundering, which occurred from at least March 2017 through December 2019, in violation of the criminal law of Portugal, specifically, Article 368A of the Portuguese Criminal Code.  Under the Convention, the United States is obligated to assist in response to the Request.

3. According to Portuguese authorities, a group of Romanian nationals, including the suspects, moved to Portugal at the beginning of 2017 with the purpose of committing computer fraud and concealing the illicit origin of the proceeds of the fraud.  The suspects conducted an internet sales scam whereby they placed online advertisements of vehicles, real estate, and other products for sale or lease, and, after receiving payment from the fraud victims, did not deliver the advertised goods.  The money transferred by the victims was credited to the suspects' bank accounts in Portugal but was then transferred to accounts abroad.

4. Portuguese authorities were alerted to the fraud by reports made by Portuguese victims.  The investigation has revealed that, on March 2, 2017, the suspects established in Portugal the company Nicolae Ognean, Unipessoal Lda., which they used as a front company to create false employment contracts they used to open more than a dozen bank accounts in Portugal in furtherance of the money laundering scheme.  From March 2, 2017, through December 2019, more than 185 bank transfers, totaling approximately EUR 690,816.07 (approximately USD 775,000) were made to the suspects' Portuguese bank accounts from bank accounts in various countries.  The suspects have not declared a lawful source of income or filed tax returns in Portugal and have no known movable or immovable assets in Portugal.

5. Based on a review of Portuguese victim's accounts, the suspects' bank records in Portugal were seized, and additional transactions were discovered involving U.S. based bank accounts and potential U.S. victims, which Portuguese authorities are now seeking to identify.

6. The following transfers from banks[1] located in the United States were made to the suspects' accounts:

   a. On April 21, 2017, EUR 4,630.02 (approximately USD 5,095.17) from Chase Bank International Bank Account Number (IBAN) XXXXXX3165;

   b. On April 28, 2017, EUR 5,850.00 (approximately USD 6,437.72) from Bank of America account IBAN XXXX7260;

   c. On May 11, 2017, EUR 4,532.14 (approximately USD 4,987.46) from a Corporate America Credit Union account;

   d. On May 16, 2017, EUR 1,302.62 (approximately USD 1,433.49) from Wells Fargo account number XXXX1240;

   e. On May 30, 2017, EUR 1,607.57 (approximately USD 1,769.07) from Citibank account number XXX6VFJ;

   f. On June 5, 2017, EUR 1,549.52 (approximately USD 1,705.19) from an HSBC Bank USA account;

   g. On June 5, 2017, EUR 3,061.77 (approximately USD 3,369.37) from a Wells Fargo account;

   h. On June 5, 2017, EUR 1,520.96 (approximately USD 1,673.76) from Bank of America account number XXXXX1976;

---

[1] Based on communications with the relevant banks, where bank account numbers are not available, it may be possible to obtain account identifiers based on other transactional data such as the date, amount, and sending bank account information.

  i. On June 5, 2017, EUR 1,579.65 (approximately USD 1,738.35) from a Wells Fargo account;

  j. On June 5, 2017, EUR 1,586.76 (approximately USD 1,746.17) from JP Morgan Chase account number XXXXX4400;

  k. On June 6, 2017, EUR 1,596.74 (approximately USD 1,757.16) from Bank of America account number;

  l. On June 13, 2017, EUR 1,597.30 (approximately USD 1,757.77) from a Wells Fargo account;

  m. On June 21, 2017, EUR 1,533.04 (approximately USD 1,687.06) from Bank of America account number XXXXXX634;

  n. On June 22, 2017, EUR 1,533.04 (approximately USD 1,687.06) from Bank of America account number XXXXX2018;

  o. On June 23, 2017, EUR 1,607.86 (approximately USD 1,769.39) from a Deutsch Bank account;

  p. On June 27, 2017, EUR 1,537.70 (approximately USD 1,692.19) from a JP Morgan Chase account;

  q. One July 14, 2017, EUR 2,307.31 (approximately USD 2,307.31) from Wells Fargo account number XXXXXX1765;

  r. On September 7, 2017, EUR 1,593.84 (approximately USD 1,753.97) from Wells Fargo account number XXX5785.

 7. To further the investigation, Portuguese authorities have asked U.S. authorities to provide bank records, including account holder information, pertaining to the above account numbers and transactions, and to interview the account holders.

LEGAL BACKGROUND

8.     A treaty[2] constitutes the law of the land.  U.S. Const. art. VI, cl. 2.  The provisions of a treaty have equal footing with acts of Congress and are binding on the courts.  See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it."  United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted).  To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute.  Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).  A multilateral convention is a treaty under U.S. law.

9.     When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*     \*     \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*     \*     \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or

---

[2] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

10. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[3] This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

11. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[4] has reviewed and authorized the request and executes the request itself or delegates execution to another attorney for the government.[5] Upon

---

[3] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 ("commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[4] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[5] "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

such a duly authorized application, Section 3512 authorizes a federal judge[6] to issue "such orders as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence.  18 U.S.C. § 3512(a)(1).

12. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents.  The appointed person has authority to: (1) issue an order requiring a person to appear and/or to produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or to produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena."  Any such subpoena may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

13. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself.  Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign authority," the

---

[6] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

Prosecutor-General's Office, International Cooperation Department, the designated Central Authority in Portugal, and seeks assistance in the investigation of money laundering – a criminal offense in Portugal.  The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records and witness interview(s), falls squarely within that contemplated by Section 3512 and the Convention.  Finally, this application was properly filed in the District of Columbia.

14. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.  The Convention itself contemplates the need for confidentiality with respect to all aspects of the execution of a request.  Specifically, Article 18, paragraph 20, provides: "The requesting State Party may require that the requested State Party keep confidential the fact and substance of the request, except to the extent necessary to execute the request."

15. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Convention authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner's subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients.  This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance.  Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the

Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987).  Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner's subpoena.

16.     Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Courtney E. Lee, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the evidence.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____
Courtney E. Lee
Trial Attorney
D.C. Bar Number 249279
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 305-6761
Courtney.Lee2@usdoj.gov